IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00148-NRN

CYNTHIA M. PARAZAK,

Plaintiff,

v.

ANDREW M. SAUL,[1] Commissioner of Social Security,

Defendant.

---

**OPINION AND ORDER**

---

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Cynthia M. Parazak was not disabled for purposes of the Social Security Act. AR[2] 12-28. Ms. Parazak has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #11.

## Factual Background

When Ms. Parazak filed her initial application for Social Security Disability benefit on March 29, 2015, she alleged that she suffered from the following impairments:

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. ##11, and 11-1 through 11-12.

fibromyalgia, cervical radiculitis, cervical spondylosis, lumbar radiculitis, lumbosacral spondylosis, left knee pain, morbid obesity, sleep apnea, degenerative disc disease, and lateral recess stenosis. AR 82-83. At the time of her application, Ms. Parazak had not been diagnosed with Trigeminal Neuralgia ("TGN").

Mr. Parazak has a lengthy history of receiving medical treatment for pain. She began treating at Colorado Pain in October 2014, and continued to receive treatment off and on through September 2015. AR 339-401. In December 2015, Ms. Parazak began treatment at Colorado Comprehensive Spine ("CCS") for lower back pain. AR 719-29. Later, on September 13, 2017, CCS records indicate that that Ms. Parazak had a history of "diffuse neck pain. Trigeminal neuralgia." AR 717, 719.

On March 29, 2016, Ms. Parazak went to the emergency room complaining of left ear and jaw pain, left sinus tenderness, and headache and pain that had been radiating down her neck for four days. AR 69. On April 7, 2016, Ms. Parazak reported this new, different jaw pain in a visit to Family Care SouthWest. AR 683-87. At that time, physician assistant Lisa Keller, P.A.-C., suggested that these new symptoms could be TGN after Ms. Parazak reported that she stopped taking one of her medications, Topamax, because she thought it was causing the new pain. *Id.* The left jaw pain was accompanied by pain in her ear, mid cheek, lower cheek and into her upper neck and had lasted more a week and a half. AR 683. Ms. Keller noted that Ms. Parazak "has never had this kind of jaw pain-just wanted to die." *Id.* On April 14, 2016, Ms. Parazak again saw Ms. Keller and reported that talking bothered her jaw, but it was "overall much better," and Ms. Keller again suggested that the pain was TGN. AR 679. Ms. Keller prescribed a steroid to help with the TGN pain. AR 687. Later, on January 19,

2017, Mr. Parazak was prescribed medication specifically for TGN. AR 645. In the interim, Ms. Parazak had been prescribed several medications for pain other than her jaw pain. AR 648, 650, 654, 657, 667 & 677.

According to the medical records from Family Care SouthWest, Ms. Parazak continued to be treated for TGN through June 2017, when Ms. Keller discussed the effectiveness of the medication prescribed for Ms. Parazak's TGN. Ms. Parazak was prescribed a different medication to treat her TGN because the medication she was taking (carbamazepine) was not effective at a lower dose and caused her to be "non-functional" on a higher dose. AR 608-12.

Despite these records, the ALJ stated there was no medical evidence to substantiate Ms. Parazak's complaints and determined that her TGN was non-severe. AR 20. Ms. Parazak argues that there was medical evidence to establish that she was disabled because of the pain she was experiencing, and she should be entitled to Social Security benefits. Here, Ms. Parazak limits her appeal to one issue: whether the ALJ properly concluded that Ms. Parazak's TGN was non-severe. Dkt. #15, p.7 at ¶12 & pp.17-19.

## **Standard of Review**

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *T-Mobile South,*

*LLC v. Roswell*, 135 S.Ct. 808, 815 (2015)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations … [T]he threshold for such evidentiary sufficiency is not high. Substantial evidence … is more than a mere scintilla … It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations and internal quotation marks omitted).

The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). At the same time, determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985). Ultimately, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## **Background**

At the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Mr. DeHerrera has the following severe

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

impairments: (1) degenerative disk disease; (2) fibromyalgia; and (3) obesity. AR 18.

The ALJ also found that Ms. Parazak had the "medically determinable impairments" of tinnitus, sleep apnea, and depression, all of which were deemed "non-severe in nature." AR 18-19. The ALJ did not address Ms. Parazak's other complaints from her application, and separately addressed Ms. Parazak's diagnosis with TGN without specifically stating whether it was a medically determinable impairment:

> The claimant has been diagnosed with trigeminal neuralgia (Ex.10 F). She alleges that she has headaches brought on by bright light and that these headaches often prevent her from completing her work. Although her treating source, Lisa Keller, PA-C, has also listed this condition in a residual functional capacity assessment, the restrictions cited are not supported by objective medical signs or exam findings (Exs. 11F & 13F). Because there is no medical evidence to substantiate the claimant's alleged symptoms or restrictions from this condition, the Administrative Law Judge finds that it does not significantly limit her ability to perform basic work activities and is non-severe in nature.

AR 20.

The ALJ then determined at step three that Ms. Parazak "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations. AR 19. Because she concluded that Ms. Parazak did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Ms. Parazak has the following residual functional capacity ("RFC"):

> . . . [Ms. Parazak] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can stand and/or walk for 2 hours in an 8 hour day, occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, never work at unprotected heights, and

---

*Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

requires a 2 minute break to stand and stretch after every 30 minutes of sitting during the work day.

AR 21. The ALJ found that Ms. Parazak is capable of performing past relevant work as an accounting clerk and a telephone solicitor. AR 27. Accordingly, Ms. Parazak was deemed not to have been under a disability since December 1, 2014. AR 28.

## Analysis

Ms. Parazak challenges the ALJ's decision on one basis: she contends that the ALJ erred when she found that Ms. Parazak's TGN was non-severe. Specifically, Ms. Parazak argues that the ALJ erred when she concluded that there was no objective evidence to support Ms. Parazak's diagnosis of TGN because (1) TGN is a condition for which there may be no objective evidence, and (2) the ALJ ignored the medical evidence and opinion of physician assistant Lisa Keller and improperly confined her review of medical records to those providers who did not treat Ms. Parazak for TGN. However, the opinion, diagnosis, and records of Ms. Parazak's treatment by Ms. Keller cannot be relied on to find that her TGN was a medically determinable impairment. As such, the Court must affirm the ALJ's decision.

The Commissioner and Ms. Parazak agree that TGN is a chronic pain condition that affects the trigeminal nerve (which carries sensation from the face to the brain) that can cause jolts of excruciating pain. Dkt. #16 at n.2. *See also Karns v. Colvin*, No. CV 15-9241-JWL, 2017 WL 119585, at *3 (D. Kan. Jan. 12, 2017) (noting that the Commissioner acknowledged that "trigeminal neuralgia is a chronic pain condition that … causes extreme, sporadic sudden burning or shock-like facial pain that lasts from a few seconds to two minutes per episode"). But, the ALJ found Ms. Parazak's TGN was "non severe," noting that there was "no medical evidence to substantiate the claimant's

6

alleged symptoms or restrictions from this condition." AR 20. Ms. Parazak contends that this conclusion by the ALJ with respect to her TGN is reversible error.

Ms. Parazak asserts first that the ALJ erred because TGN is a disorder that cannot be diagnosed based on objective evidence, *citing Fomby v. Astrue*, 2009 WL 1203410 *3 n.7 (W.D. Va. May 4, 2009) and *Deterding v. Astrue*, 1:11-cv-00013 (E.D. Tenn. Feb 21, 2012). *See also Morrison v. Comm'r of Soc. Sec.*, No. 16-1360, 2017 WL 4278378, at *4 (6th Cir. Jan. 30, 2017) (noting that "the lack of objective medical evidence and laboratory findings in the case of a claimant suffering from conditions like trigeminal neuralgia … is not an appropriate basis on which to deny a claim"); *Johnson v. Life Ins. Co. of N. Am.*, No. 16-CV-0159-WJM-MEH, 2017 WL 4180328, at *11 (D. Colo. Sept. 21, 2017) (in ERISA case determining long-term disability coverage under insurance policy, TGN is "similar to ailments like fibromyalgia" where the "claimant's subjective, uncorroborated complaints of pain constitute the only evidence of the ailment's severity") (internal quotations marks omitted) (quoting *Meraou v. Williams Co. Long Term Disability Plan,* 221 Fed. App'x 696, 705 (10th Cir. 2007)). The Court agrees that TGN is a condition that may well require an ALJ to consider subjective complaints or evidence in deciding whether a particular claimant suffers from a disability.

Ms. Parazak next contends that the ALJ cited to the wrong medical records in concluding that Ms. Parazak's TGN was not severe, ignoring the records of Ms. Keller's treatment. The Court agrees that the ALJ's citation to the records from CCS may have been an error and further finds that the ALJ does not provide an adequate explanation of the ALJ's reasoning with respect to Ms. Parazak's TGN. AR 20. But, as outlined below, even if the ALJ was wrong on both counts and the medical records reflecting Ms.

7

Keller's treatment of Ms. Parazak do contain objective medical evidence of TGN, those records alone would not support a finding that Ms. Parazak's TGN was a medically determinable impairment.

As the Commissioner points out, Ms. Keller, who is a physician's assistant, was not an "acceptable medical source" at the time Ms. Parazak submitted her application. *See* 20 C.F.R. § 401.1502(a)(8). For applications filed before March 1, 2017, the opinion of a physician's assistant cannot be used to support a diagnosis of a medically determinable impairment. *See Crane v. Astrue*, 369 F. App'x 915, 919 (10th Cir. 2010) (stating that "the regulations and ruling" clearly provide "that information from non-medically acceptable sources cannot establish a medically determinable impairment"). This means that the ALJ's ultimate conclusion that Ms. Parazak's TGN was not a medically determinable impairment was proper because there was no evidence from an acceptable medical source to support such a finding. Accordingly, as the Commissioner contends, the ALJ was correct in refusing to consider records reflecting treatment by Ms. Keller in determining whether Ms. Parazak's TGN was a medically determinable impairment.

Under different circumstances, the Court might reject the Commissioner's arguments as impermissible post hoc rationalization. S*ee Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (rejecting Commissioner's "post hoc argument supplying possible reasons" for an ALJ's treatment of a medical opinion). But, under the circumstances of this case, the ALJ's error in not explaining her analysis is harmless. *Dray v. Astrue,* 353 F. App'x 147, 149 (10th Cir. 2009) ("the failure to find a particular

impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe.").

The Court also recognizes that the ALJ did not explain why she was rejecting Ms. Keller's opinion, diagnosis, or treatment records. Nor did the ALJ state explicitly whether she found Ms. Parazak's TGN a medically determinable impairment. Rather, the ALJ ignores those two issues and concludes that Ms. Parazak's TGN is "non severe" because, according to the ALJ, there was no medical evidence to show that it was severe. AR 20. Had there been other medical evidence in the record from an acceptable medical source to support a finding that Ms. Parazak's TGN was a medically determinable impairment, the ALJ would have been required to address the records and opinion of Ms. Keller in determining the severity of Ms. Parazak's impairment. *See, e.g. Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) ; 20 C.F.R. §§ 404.1513(d) and 416.913(d) ("Evidence from other sources [may be used] to show the severity of … impairment(s) and how it affects [a claimant's] ability to work."). But, because Ms. Parazak filed her application before March 1, 2017, a finding, based on evidence from a medically acceptable source, that her TGN is a medically determinable impairment was a threshold requirement before the ALJ could consider Ms. Keller's records and opinion to establish the severity of Ms. Parazak's TGN.[4]

Ultimately, even if the Court were to remand for an explanation of the ALJ's conclusions with respect to Ms. Parazak's TGN, the treatment records of Ms. Keller, who was not a medically acceptable source at the time, could not be used as a basis to find that Ms. Parazak's TGN was a medically determinable impairment. In light of the

---

[4] The Court is mindful that, had Ms. Parazak filed her application after March 1, 2017, the treatment records and opinion of Ms. Keller would likely carry great weight.

fact that the only other reference to TGN was a single reference in the medical records from CCS, the Court cannot see how such a remand would garner a different result.

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**.

Dated this 30th day of October, 2019.

BY THE COURT:

*N. Reid Neureiter*

N. Reid Neureiter
United States Magistrate Judge